## GROSS IRON ORE COMPANY v. LEONARD PAULLE.[1]

### January 28, 1916.

### Nos. 19,496—(154).

**Facts.**

    1. A corporation without by-laws and with no provision in its articles of incorporation for officers or directors, or defining the duties of either, permitted one who was its principal stockholder and its president and treasurer to transact all its business. This officer, with the secretary, gave a mortgage upon land of the corporation to secure a note of the corporation issued by them.

[1] Reported in 156 N. W. 268.

**Corporation — authority to execute mortgage.**

2. Such officers have usually no power to mortgage corporate real estate. The board of directors is usually the managing board of the corporation. But where the duties of directors are not defined by charter or statute, the stockholders may select other agencies for the management of the corporate business.

**Same — implied authority of single officer.**

3. In such case they may confer the entire power of the corporation upon an officer, and the existence of such power may arise from implication. Where the stockholders of a corporation by direct act or acquiescence invest an officer with the functions of the board of directors, a mortgage of the corporation properly executed in its behalf by him is valid, though not authorized by vote of the stockholders or directors.

**Corporation — application of proceeds of mortgage.**

4. One who loans money to a corporation and who pays it to the proper officer is not called upon to see that it is properly applied; but if the money is borrowed for the private use of the officer to whom it is paid, and the lender has notice of that fact, the mortgage may be set aside at the suit of the corporation.

**Action to cancel mortgage — notice of loan to officer — finding of court.**

5. In an action by the corporation to set aside a mortgage given by the corporation, but to secure a loan of money borrowed for the own private use of an officer, a finding of notice to the mortgagee of the officer's purpose is essential to a judgment for plaintiff. This court cannot assume the existence of such notice without a finding, unless the evidence is conclusive to that effect.

**Omission of material finding prejudicial error.**

6. Failure of the court to make a finding upon such an essential point is error which requires a reversal of a judgment setting aside such a mortgage.

**Ratification by stockholders.**

7. Ratification of a mortgage given by an officer for his own private benefit, and of which fact the mortgagee has notice, can only be accomplished by action of all the stockholders, each acting with full knowledge of the facts.

Action in the district court for Lake county to set aside a mortgage executed in behalf of plaintiff to defendant and to free the mortgaged premises from the cloud caused by the mortgage. The case was tried in Hennepin county before Molyneaux, J., who made findings and or-

dered judgment in favor of plaintiff. Defendant's motion for amended findings was denied. Defendant's motion for a new trial was denied. From the order denying his motion for amendment of findings and from the order denying his motion for a new trial, defendant appealed. Reversed and new trial granted as to one issue.

*Charles G. Laybourn,* for appellant.

*Cobb, Wheelwright & Dille* and *C. M. Bracelen,* for respondent.

HALLAM, J.

1. In 1902 Ludwig Gross owned a tract of land in Lake county, Minnesota. ·He believed it to be ore-bearing land, and in November, 1902, he, together with defendant and one Scrimgeour, formed a corporation, known as the Gross Iron Ore Company, for the purpose of mining and working ores and minerals. The land was deeded by Gross to the corporation. Stock was issued, three-fifths to Gross, two-fifths to one Buse, a resident of New Jersey. Upon what consideration stock was issued to Buse does not appear. Gross transferred some of his stock to defendant, and stock was transferred by both Gross and Buse from time to time to a number of other persons. Up to 1910 no by-laws were ever adopted. The articles of incorporation contained no provision as to duties of officers. In fact no provision was made for officers at all. No provision was made for a board of directors or for meetings of either stockholders or directors. The articles devolve upon no one the duty of management of the business of the corporation. The minute book of the corporation shows that a meeting of the three incorporators was held on the day the articles were signed, and that these three elected themselves as a board of directors. There are also minutes of a meeting of the board of directors held on the same day, which recite that Gross was elected president and treasurer, defendant vice-president, and Scrimgeour secretary. Up to 1910 no business was ever transacted by the board of directors except to elect officers. No meeting of either stockholders or directors was held from 1906 to 1910.

The corporation was formed to take over and develop Gross' land. According to the evidence of plaintiff's own witness, Gross was, up to 1910, "the one person who carried on the business of the corporation, whatever there was to be done." He was in name its president and

treasurer, but in fact he was essentially the corporation itself. He financed it. No money was received from sale or issuance of stock. All the money paid into its treasury, or used in its behalf, was advanced by Gross, and he paid it out without authority from anyone but himself. All the business done was done by him. True, no great amount of business was done. But some business of importance was done. This land was purchased or taken over by the corporation and stock issued in payment thereof. Taxes were paid from time to time, some trips made and negotiations relative to leases carried on. So far as the records show, neither the board of directors nor the stockholders took any part in the transaction of any of this business. No findings were made as to any of these facts, except the bare fact of the existence of the corporation; but such findings were asked for by the defendant, and the evidence on these points is uncontroverted and conclusive.

In March, 1909, Gross, as president, and Scrimgeour, as secretary, executed and delivered to defendant a mortgage for $3,000, covering the land mentioned. Defendant paid the amount to Gross, and Gross devoted it to his own personal use. This action is brought to set aside this mortgage. The trial court found for plaintiff, and defendant appeals.

2. This mortgage was not authorized by the board of directors. The first question is as to the power of these two officers, one the president and treasurer, and the other the secretary, to give a real-estate mortgage without authority from the board of directors.

It is doubtless true that such officers have usually no implied power to mortgage corporate real estate. Such power usually resides in the board of directors. But we are not concerned with usual corporations. This was an unusual one. We are of the opinion that under the conceded facts of this case it must be held that Gross, as president and treasurer, and virtual manager of all the operations of the company, together with the secretary of the corporation, had the power and authority to execute a mortgage of this land to raise money for any legitimate corporate purpose. While the board of directors is usually the managing body of the corporation, it is not necessarily so. Where the duties of directors are not expressly prescribed by statute or by the articles of incorporation, they derive their power from the stockholders, who may, if they see fit, select other agencies for the transaction of the corporate

business. Cunningham v. German Ins. Bank, 101 Fed. 977, 980, 41 C. C. A. 609; 1 Morawetz, Private Corp. (2d ed.) § 515.

3. In such case the stockholders may confer the entire power of the corporation upon an officer, and it need not be so conferred in writing or by entry in the corporate records. The existence of plenary authority in an officer may be implied from the fact that he has been accustomed to exercise such authority with the assent and acquiescence of the stockholders. McElroy v. Minnesota Percheron Horse Co. 96 Wis. 317, 71 N. W. 652; Miller v. Matthews & Kirkland, 87 Md. 464, 475, 40 Atl. 176; Chambers v. Lancaster, 160 N. Y. 342, 54 N. E. 707; Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. ed. 49. We adopt and apply the rule stated in Cunningham v. German Ins. Bank, 101 Fed. 977, 41 C. C. A. 609, and approved by Judge Thompson in 10 Cyc. 1199, as follows:

"Where the shareholders of a corporation, by their direct act or acquiescence, invest the executive officers of the company with the powers and functions of the board of directors as a continuous and permanent arrangement, the board being entirely inactive, and the officers discharging all its duties, a mortgage on the property of the corporation, made and executed in its behalf by such officers, is valid, although not authorized by any vote of the shareholders or directors."

See also Martin v. Niagara Falls Paper Mnfg. Co. 44 Hun, 130; Garmany v. Lawton, 124 Ga. 876, 53 S. E. 669, 110 Am. St. 207; Poole v. West Point Butter & Cheese Ass'n. 30 Fed. 513; G. V. B. Min. Co. v. First Nat. Bank, 95 Fed. 23, 36 C. C. A. 633; and see Kraniger v. People's Bldg. Society, 60 Minn. 94, 61 N. W. 904; Rosemond v. Northwestern A. R. Co. 62 Minn. 374, 64 N. W. 925.

4. If this mortgage had been given to one who was a stranger to the affairs of the corporation, we think there would have been no question raised as to its validity. The amount secured was paid in full to Gross, who was in fact treasurer of the corporation. The doubt as to the validity of the mortgage arises wholly from the fact that Gross misappropriated the money. Clearly the fact that the treasurer misappropriated money which he borrowed is not, standing alone, sufficient to render invalid the security given. Schreyer v. J. S. Bailey & Co. 97 App. Div. 185, 89 N. Y. Supp. 870; Buchwald Transfer Co. v. Hurst 111 Md. 572, 75 Atl. 111, 19 Ann. Cas. 619; Thompson v. Lambert,

44 Iowa, 239. One who loans money to a corporation is required only to pay it to the proper officer of the corporation. He is not called upon to follow it up and see that it is properly used or applied.

However, if it appears that money is borrowed, not for a corporate purpose, but for the private use of the officer of the corporation to whom it is paid and with intent on his part to divert it to such private use, and that the lender knows or is chargeable with knowledge of that fact, then the transaction, so far as the corporation is concerned, is a nullity. See First National Bank of Rice Lake v. Flour City Trunk Co., 118 Minn. 151, 136 N. W. 563; National City Bank of Minneapolis v. Zimmer V. R. Co. infra, page 211, 156 N. W. 265.

5. The complaint alleges that this money was never paid to any officer for corporate purposes, and was not received into the treasury of the corporation, and that defendant knew these facts at the time the mortgage was executed and delivered. Evidence was offered on both sides bearing on the knowledge of defendant of the misuse or proposed misuse of this fund. But upon this point the court made no finding. As before indicated, we think the existence of such knowledge or notice is essential to the right of plaintiff to avoid this mortgage. We cannot assume the existence of such knowledge or notice, in the absence of a finding, unless the evidence is conclusive to that effect. Sjoberg v. Security Savings & Loan Assn. 73 Minn. 203, 75 N. W. 1116, 72 Am. St. 616; and it is not conclusive in this case.

6. It is necessary that the court make findings upon every material issue of fact, the determination of which is necessary to sustain its judgment, and, if it fails to do so, the decision cannot be sustained. Brainard v. Hastings, 3 Minn. 17 (45); Lowell v. North & Carll, 4 Minn. 15 (32); Newman v. Newman, 68 Minn. 1, 70 N. W. 776. Defendant asked the court to find that the request made by Gross was for a loan to the corporation to be used in its behalf, and asked the court to find other facts which negative any knowledge of Gross' purpose to divert this fund. We cannot say that he was entitled to these findings, since the evidence was not conclusive in his favor. The evidence was such that the court might have found either way, but it should have made some finding. For this reason there must be a new trial as to this issue; that is, as to whether defendant was chargeable with notice that Gross borrowed the

amount, which the mortgage was given to secure, for his private use. We see no occasion for a new trial of any other issue.

7. Defendant contends that, whatever the infirmity in this mortgage, the action of the officers in giving it was in all respects ratified by the stockholders. At a meeting of the stockholders held in October, 1910, a resolution was passed "that all actions heretofore had and done by the officers and directors of this corporation in their * * * official capacity in behalf of said corporation, be and the same are hereby, by the stockholders of this corporation, in all things approved, ratified, and confirmed."

The adoption of this resolution cannot be considered a ratification of an act of an officer of the corporation done in the name of the corporation, but for his own private benefit. Nothing less than the unanimous action of the whole body of stockholders can authorize the use of the corporate credit for the benefit of an individual. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854; Rothwell v. Robinson, 39 Minn. 1, 38 N. W. 772, 12 Am. St. 608. And nothing short of the unanimous action of the whole body can ratify such action after it is done.

Ratification to be effective must be with full knowledge of the facts (Jackson v. Badger, 35 Minn. 52, 26 N. W. 908), and no stockholder can be said to ratify a mortgage given by the corporation for the private benefit of an officer of the corporation, unless he have notice both of the giving of the mortgage and of the purpose for which it was given. Knowledge of one stockholder is not knowledge of the others, nor is it notice to them. In this case it affirmatively appears that at least one stockholder, the present secretary of the corporation, had no knowledge of any of the facts pertaining to the mortgage.

If defendant was ignorant of the fact that Gross was borrowing this money for his personal use, no ratification was necessary. If he was not, there was no ratification.

Order reversed and new trial granted on the issue indicated in this opinion.