SIMON SHELLBURG, Plaintiff and Respondent, v. WILTON
  BANK OF WILTON, North Dakota, a Corporation, Defendant
  and Respondent.
I. C. DAVIES, as Administrator of the Estate of Charles J. Larsson,
  Intervener and Appellant, v. BISMARCK BANK, Defendant
  and Respondent.

(167 N. W. 721.)

**Banks — certificates of deposit — action to recover on — transfer of certificates — to plaintiff — by owner just prior to his death.**

1. The plaintiff sues to recover $6,000 on deposit certificates left by his uncle. The claim is that, two or three days prior to his death, the uncle transferred the certificate to his nephew, and that he did so relying on a promise of the nephew to care for him during his life.

**Evidence of transfer — record fails to show.**

2. There is no proof that plaintiff ever made such a promise or that deceased ever agreed to transfer the certificates to him.

**Contract — consent of parties to — must be free and mutual.**

3. The consent of parties to a contract must be free and mutual and communicated by each to the other.

Opinion filed December 14, 1917.  On rehearing, April 27, 1918.  Second petition for
rehearing denied, May 15, 1918.

Actions on certificates of deposit.

Appeal from District Court, Burleigh County, Honorable *W. L. Nuessle,* Judge.

Reversed.

*Theodore Koffel* and *I. C. Davies (H. A. Bronson,* of counsel), for appellant.

Performance of consideration by living with a person during his life will not take an oral agreement therefor out of the Statute of Frauds.  Austin v. Davis, 128 Ind. 472, 12 L.R.A. 120; Wallace v. Long, 105 Ind. 522, 55 Am. Rep. 222; Bender v. Bender, 37 Pa. 419; Gorham v. Dodge, 122 Ind. 1; Pond v. Sheehan, 132 Ill. 312, 8 L.R.A.

414; Moore v. Small, 19 Pa. 461; Crabell v. Marsh, 38 Ohio St. 331; Mauck v. Melton, 64 Ind. 414; Ham v. Goodrich, 37 N. H. 185; Smith v. Smith, 28 N. J. L. 208; Shanahan v. Swan, 48 Ohio St. 25; Hunt v. Hunt, 171 N. Y. 396, 59 L.R.A. 306; Franklin v. Matoa Gold Min. Co. 16 L.R.A.(N.S.) 381, 158 Fed. 941.

While the complaint does not so show, the proof here shows, if it shows anything, that the only consideration was for services "thereafter to be rendered." Spinney v. Hill, 81 Minn. 316, 84 N. W. 116.

Plaintiff seeks specific performance of a contract he claims to have made with the decedent. He seeks specific relief. The certificates of deposit which plaintiff claims decedent transferred to him have never been transferred because they were never indorsed by the owner, or decedent, and plaintiff cannot collect the money from the bank without such indorsement, under the express terms of the certificates, regardless of the statute on transfer of title. Therefore, in both instances the plaintiff seeks to have the court declare, in effect, an indorsement. He is seeking equitable relief. Code, § 7185, subd. 2; note to Selover, Neg. Inst. p. 163; Freeman v. Perry, 22 Conn. 617; Pavey v. Stauffer, 45 La. Ann. 353, 19 L.R.A. 716, 12 So. 512; Jenkins v. Wilkinson, 113 N. C. 532, 18 S. E. 696.

A bank is not bound to pay deposits evidenced by certificates of deposit except on production and surrender of the certificates properly indorsed. 7 C. J. p. 650, § 346; Fells Point Sav. Inst. v. Weedon, 18 Md. 320, 81 Am. Dec. 603; Cottle v. Buffalo Marine Bank, 166 N. Y. 53, 59 N. E. 736; Munger v. Albany City Nat. Bank, 85 N. Y. 580; Pardee v. Fish, 60 N. Y. 265, 19 Am. Rep. 176; Payne v. Gardiner, 29 N. Y. 146; Read v. Buffalo Marine Bank, 59 Hun, 578, 13 N. Y. Supp. 578; Tobin v. McKinney, 15 S. D. 257, 91 Am. St. Rep. 694, 88 N. W. 572, rehearing 14 S. D. 52, 91 Am. St. Rep. 688, 84 N. W. 228; Divine v. Unaka Nat. Bank, 125 Tenn. 98, 39 L.R.A.(N.S.) 586, 140 S. W. 747; Bellows Falls Bank v. Rutland Co. Bank, 40 Vt. 377; Hyland v. Roe, 111 Wis. 361, 87 Am. St. Rep. 873, 87 N. W. 252; Dollar v. International Bkg. Corp. 13 Cal. App. 331, 109 Pac. 499; Read v. Brayton, 143 N. Y. 342, 38 N. E. 261; 136 N. Y. 454, 32 N. E. 1083; Truman v. Dakota Trust Co. 29 N. D. 456, 151 N. W. 219.

Specific performance cannot be enforced against a party to a con-

tract if he has not received an adequate consideration for the contract. Code § 7198, subd. 1.

Or if it is not as to him just and reasonable. Code, § 7198, subd. 2; Hazelton v. Reed, 46 Kan. 73, 26 Am. St. Rep. 86, 26 Pac. 450.

It is not shown here that any service was ever performed by plaintiff, and therefore no value or consideration passed. Ramsey v. Gheen, 99 N. C. 215, 6 S. E. 75.

A court of equity will not lend its aid to a party who seeks to take an inequitable advantage of unforeseen events and circumstances, not contemplated by the contracting parties, especially when the complaining party can have adequate relief at law. Leigh v. Crump, 1 Ired. Eq. 299; Cannaday v. Shepard, 2 Jones Eq. 224; Lloyd v. Wheatly, 2 Jones Eq. 267; Herren v. Rich, 95 N. C. 500; Love v. Welch, 97 N. C. 200, 2 S. E. 242; Adams, Eq. 87 and notes.

A bill to compel the specific performance of a contract is an application to the sound discretion of the court, and such performance will not be decreed when, for any reason, it would be inequitable. Williams v. Williams (Wis.) 6 N. W. 814; Town v. Railway Co. (Wis.) 27 N. W. 169; Bird v. Logan (Kan.) 10 Pac. 564; Kelley v. Kendall (Ill.) 9 N. E. 261; Kelly v. Railroad Co. (Cal.) 16 Pac. 390; Bartley v. Greenleaf, 112 Iowa, 82, 83 N. W. 824.

In the case here the death of Larsson, the owner of the certificates, before performance of any contract was commenced, rendered it impossible for plaintiff to claim the aid of the court to put the certificates in such condition that the banks would have to honor them, according to their specific requirements, and to the law. Oliver v. Johnson (Mo.) 142 S. W. 277; Russel v. Sharp, 192 Mo. Loc. Cit. 285, 286, 111 Am. St. Rep. 496, 91 S. W. 134, and cases cited; Forrister v. Sullivan, 231 Mo. loc. cit. 373, 132 S. W. 722, and cases cited; Goodin v. Goodin, 172 Mo. loc. cit. 48, 72 S. W. 502, and cases cited.

It is essential to specific performance that the consideration should be valuable; a merely good consideration, such as natural love and affection, or the performance of a moral duty, will not suffice. Jeffreys v. Jeffreys, Cr. & P. 138; Moore v. Crofton, 3 Jones. & Lat. 442; Kennedy v. Ware, 1 Pa. 445; Morris v. Lewis, 33 Ala. 53; Keffer v. Grayson, 76 Va. 517; Barrett v. Geisinger, 179 Ill. 240; Bispham, Eq. 9th ed. 602; Winter v. Goebner, 21 Colo. 279, 40 Pac. 570; 2 Colo.

App. 259, 30 Pac. 51; Jeffries v. Jeffries, Craig & Ph. 138; Minturn v. Seymour, 4 Johns Ch. 497; Tallmadge v. Wallis, 11 Wend. 106; Cathcart v. Robinson, 5 Pet. 264; Ferguson v. Blackwell, 8 Okla. 489, 58 Pac. 647; Flood v. Templeton, 148 Cal. 374, 83 Pac. 148; Hamlin v. Stevens, 117 N. Y. 39, 69 N. E. 118; Ward v. Yorba, 123 Cal. 447, 56 Pac. 58; Brevator v. Creech, 186 Mo. 558, 85 S. W. 527.

Equity will not interfere to enforce the specific performance of a gift. Bispham's Principles of Equity, 9th ed. 601; Shepherd v. Shepherd, 1 Md. Ch. 244; Holland v. Hensley, 4 Iowa, 222; Buford v. McKee, 1 Dana (Ky.) 107; Studer v. Seyer, 67 Ga. 125; Strayer v. Dickinson, 205 Ill. 257; Re Lucan, L. R. 45 Ch. Div. 470; Tonseth v. Larson, 69 Or. 387; Atchley v. Perry, 55 Tex. Civ. App. 538.

Neither party to an obligation can be compelled to specifically perform it, unless the other party thereto has performed or may be compelled to so perform either completely or nearly so, together with full compensation for any want of entire performance. Code, § 7193, and cases cited; note to Emerson v. Pacific Coast & N. Packing Co. 1 L.R.A.(N.S.) 445; 1 Parsons, Contr. 9th ed. p. 486; Hammon on Contracts, p. 682.

The court erred in omitting to make findings, conclusions, and order for judgment as to the intervener. The intervener was in the cases through the orders of the court; he had the right to be there, and proper provision for a judgment as to him should have been made by the court. Osborn v. McClelland, 43 Ohio St. 284; Kernohan v. Durham, 48 Ohio St. 117; Sturtevant v. Bohn, 57 Neb. 671; Code, § 7143; Coburn v. Smart, 53 Cal. 742; Kimball v. Richardson-Kimball Co. 111 Cal. 396, 43 Pac. 111.

His rights should have been fully adjudicated and settled. Kimball v. Richardson-Kimball Co. supra; Coffey v. Greenfield, 55 Cal. 382.

*F. H. Register* and *S. E. Ellsworth,* for respondent, Shellburg, *Newton, Dullam, & Young,* for respondent, Wilton Bank, and *Benton Baker,* for respondent, Bismarck Bank.

All distinction between actions at law and suits in equity is abolished. Under the practice this cause was properly a jury case. Code, §§ 7608, 7846.

In the absence of a statute providing otherwise, both negotiable

notes and choses in action may be transferred without indorsement. Our statute does not require that either class of instruments be transferred in writing, and a transfer may be made without writing in cases in which a writing is not expressly required. Code, § 5493; Roberts v. First Nat. Bank, 8 N. D. 474, 79 N. W. 993; Krefer v. Tolbut (Minn.) 151 N. W. 529; Fruend v. Bank, 76 N. Y. 352; Basket v. Hassell, 107 U. S. 602.

Where an action properly triable by a jury is tried by the court without a jury, the supreme court will not try the case *de novo,* but the findings of the trial court are presumed to be correct. Appellant has the burden of showing error, and a finding based upon parol evidence will not be disturbed unless shown to be clearly and unquestionably opposed to the preponderance of the evidence. State Bank of Verona v. Maier, 34 N. D. 259, at 268.

By the delivery of the certificates of deposit here in question, the equitable title to them and the right to recover their amount passed at once to the person to whom they had been rightfully delivered. He at once becomes the real party in interest and may sue and recover in his own name. Edwards v. Wanher (Cal.) 53 Pac. 821; Smith v. Peck (Cal.) 61 Pac. 77; 20 Cyc. 1206, note 62, 1230, 1239; Connor v. Root (Colo.) 17 Pac. 733.

"A gift other than a gift in view of death cannot be revoked by the giver." Code, §§ 5538–5540.

"Soundness of mind in the donor and absence of fraud in a gift are presumed. No specific word of gift is required." Vander v. Roach (Cal.) 15 Pac. 354; Dirk v. Heiken, 61 Cal. 347.

There is nothing to show that the delivery of the certificates was made under circumstances which would naturally impress Mr. Larsson with an expectation of immediate death. The gift, therefore, was one *inter vivos,* and, when completed by delivery of the certificates, the property immediately vested in the plaintiff irrevocably, "and the donor had no more right and control over them after the delivery than any other person." Code, § 5540; 20 Cyc. 1203.

Indorsement of a negotiable instrument is not necessary to complete a valid *donatio causa mortis.* 7 Cyc. 792; Keifer v. Tolbert (Minn.) 151 N. W. 529; Westerloo v. DeWitt, 36 N. Y. 339; Riden v. Thrall (N. Y.) 26 N. E. 627.

"That the delivery of a certificate of deposit might constitute a valid *donatio causa mortis* does not admit of doubt. A certificate of deposit is a subsisting chose in action and represents the fund it describes as in the case of notes, bonds, and other securities, so that a delivery of it as a gift constitutes an equitable assignment of the money for which it calls." Re Van Alstyne (N. Y.) 100 N. E. 102; Basket v. Hassell, 107 U. S. 602; Fagan v. Troutman (Colo.) 135 Pac. 122.

Choses in action not negotiable and negotiable paper not indorsed may be the subject of a gift, and a delivery which vests in the donee the equitable title is sufficient without a complete transfer of the legal title. Camp's Appeal, 36 Conn. 88, 4 Am. Rep. 39; 20 Cyc. 1202, 1240; Johnson v. Holst (Minn.) 90 N. W. 1115; Cornell v. Cornell, 12 Hun, 312; Brown v. Brown (Conn.) 46 Am. Dec. 328; Grover v. Grover (Mass.) 35 Am. Dec. 319.

"Delivery of the key of a deposit vault containing bonds is a sufficient delivery of the bonds." Pink v. Church, N. Y. S. 307, affirmed in 29 N. E. 147; Code, § 5539.

ROBINSON, J. In this case two actions are united because they turn on the same identical question of fact. Each action is based on deposit certificates made to the deceased Charles Larsson. In each case plaintiff obtained a judgment for the amount of the certificates, and the administrator and the heirs appeal.

One complaint avers that on December 2, 1914, Larsson deposited with the Wilton Bank $3,500, receiving five certificates of deposit for $700, each payable to the order of C. J. Larsson in six months, with interest at 5 per cent. That on May 14th, Larsson for value transferred and delivered the certificates to the plaintiff, and that by mistake and inadvertence he failed to indorse the same, and died on May 17, 1915. The complaint in like manner counts on another certificate for $228.09.

In the Bismarck Bank case the complaint likewise counts on four deposit certificates of $500 each and on one for $250, dated December 3, 1914, payable in six months to the order of C. J. Larsson, with interest at 5 per cent.

The answer shows the appointment and qualification of the adminis-

trator, and claims the certificates as a part of the estate. The only consideration for the certificates of deposit was an alleged agreement on the part of the plaintiff to care for Larsson during his life, but there is nowhere in the record a word of evidence showing any such agreement, or showing that Larsson ever thought of indorsing his certificates to the nephew, the plaintiff, or that the nephew had the nerve to speak to his uncle of any such indorsement. The plaintiff was a young man of no home or property; he was a well driller and he lived in Nebraska in a very humble home with his sister, Mrs. Thurston. He had never seen his uncle only for a few days in 1914 and for three days in May, 1915, when he was received as a guest of his uncle at the home of Mr. and Mrs. Anderson, some 8 miles from Wilton, North Dakota. Larsson's age was sixty-five and during the last four years of his life he had been in ill health and had made his home with the Andersons, and they had treated him very kindly. He came to trust them, and he had promised to reward them for their care of him in addition to the sum which he paid for board. The $6,000 in question was the scrimpings and savings of many years. Larsson was nearing his grave, but he was not so feeble in body or mind as to think of transferring his $6,000 to his irresponsible and homeless nephew, and reducing himself to the position of a dependent and a pauper. He still had some hopes of life and he did think of going to live with his nephew and niece in Nebraska. To prepare for the trip on Friday afternoon of May 14, 1915, Larsson went to town with his nephew and Anderson in the car of the latter. He was helped into the bank, took a chair and waited some time for the arrival of Anderson. Then Anderson came and said to the cashier that Larsson wanted his box. The cashier asked Larsson if he wanted the box and he said, "Yes." The cashier testifies: "I got the box, opened the window and pushed it out in front of Larsson. Shellburg had the key when I pushed the box out, and he unlocked the box. Larsson wanted the cash on one certificate in the box. One of us took the certificate and asked Larsson if he wanted the money on it, and he said, 'Yes.' I asked if he was able to write his name and he said, 'No.' I wrote his name on the certificate, made his mark, and Anderson signed as a witness, and I placed the money near the deposit box in the window, and Shellburg took the money, $68.10. I locked the box myself and Shellburg said: 'We

will take the box with us.' I asked Larsson if he wanted Shellburg to carry the box and he said, 'Yes.' So I handed it over to Shellburg. I think Anderson and Shellburg both assisted the old gentleman to rise and go out of the bank."

They went home and the next day the old man became more feeble and sick, and died on May 17, 1915, about two and a half days from the time of his leaving the bank. If the old man was in a condition to do business when at the bank, if he desired to pass the title to his precious certificates, that was the time for him to do it and to put the agreement in writing in the presence of Anderson and the banker. But there is no evidence that the old man thought of making such a deal, and Shellburg did not venture to speak of it. True it is that when the cashier locked the box, wrapped it up, and passed it out of the window in front of Larsson, he pushed it to Shellburg, saying: This is for you, or this I give you, or some such words, meaning of course that Shellburg should take charge of the box on the way home. Then, when the old man got home, he had some refreshments and said to Mrs. Anderson, as she testifies: "I am ready to leave Monday. I have settled with Shellburg to take care of me, and if it don't reach what I got, he is to care for me as long as I live."

The cashier testified that Larsson wanted to know if he should take a draft for the money, of if he should turn the certificates into the bank down there, or if he should take the cash on it so that he could have excess money when he needed it. He says: "I told Mr. Larsson that he could take the certificates down there and could indorse them and turn them into the local bank and have them collect the interest on them, and if I should issue a draft at that time it would discontinue the interest on the certificates."

So, it appears poor Larsson concluded to keep his certificates drawing 5 per cent interest so he could have money as he needed it. There is no evidence that he ever thought of leaving himself a dependent or a pauper by transferring his certificates to his homeless nephew, and there is not a word of evidence that the nephew ever promised or agreed to care for his uncle, as alleged in the complaint.

A promise may be a good consideration for a promise, but in an action on a promise in consideration of a promise it is necessary to prove a promise by each party. The contract must be mutual. Both

parties must be bound or neither is bound. Section 5482. The consent of parties to a contract must be free and mutual and communicated by each to the other. Section 6837. It is essential to the existence of a contract that there should be parties capable of contracting and·a sufficient consideration.

Section 5844. Consent is not free when it is obtained by undue influence or the taking of an unfair advantage of another's weakness of mind.

In his case there is no claim that there was any performance on the part of the plaintiff. The purpose of this action is to get $6,000 for nothing, and the contract asserted, if made at all, was made at a time when the old man was sinking into his grave and when his mind and body were equally feeble, and it is contrary to equity and good conscience. However, there is no evidence of any contract.

The judgment is reversed, and judgment is ordered in favor of the interveners.

GRACE, J. I dissent.

### On Rehearing.

ROBINSON, J. On a rehearing of this case it has been strenuously insisted that, as the action is for the recovery of money only, the court is bound by the findings of the judge who presided at the trial and heard the testimony. So far as that rule has any force it does not apply in this case because there is no conflicting testimony, and hence there is no occasion to judge of the credibility of witnesses.

The claim of plaintiff was based on an alleged oral contract between himself and his deceased uncle. His claim is that he made to his uncle a promise to care for him during his life, and in consideration of such promise the uncle agreed to transfer to him deposit certificates amounting to about $6,000. In law a promise may be a good consideration for a promise, but the promises must be mutual and communicated by one to other. Both parties must be bound or neither is bound, and the parties must agree upon the same thing in the same sense.

By statute defendant was not permitted to testify to any promise on

his part, and no one has heard or testified to any promise by him. There is not in the record any testimony to show that the plaintiff ever promised to care for his deceased uncle, as alleged in the complaint. And it is mere beggary to insist that the court should presume a promise because the plaintiff was not permitted to testify.

But if the promise had been proved, still plaintiff cannot recover because of an entire failure of consideration. He did nothing whatever in pursuance of the promise. It appears beyond dispute that the plaintiff never did a thing toward the care of his uncle. True, this may have been prevented by the act of God and the sudden decease of the uncle, but that does not supply the total failure of consideration. When the consideration of a promise wholly fails, the promise is without any consideration and is unenforceable, and when the consideration fails because of mere impossibility of performance, the promise is not enforceable. 13 C. J. 368.

The plaintiff sues to get $6,000 for nothing. The decision by this court was well considered. It is clearly right and it is reaffirmed.

BRUCE, Ch. J., and CHRISTIANSON, J. I concur on the ground that I do not believe any mutual promise was proved.

BIRDZELL, J. I concur in the result. As I view the case there was competent evidence tending to establish a contract as to Larsson. Shellberg is the only person that could object to the competency of Mrs. Anderson's testimony, and he does not object for obvious reasons. However, I am of the opinion that the evidence fails to establish the terms of the contract with sufficient clearness, and that, if a contract existed, there was an entire failure of consideration. Certainly there is no evidence from which it can reasonably be inferred that Shellberg was to support Larsson while they remained at Anderson's.

GRACE, J. I dissent.

PER CURIAM. Plaintiff has filed an additional petition for rehearing, raising the question that this court has no power to order judgment, but should merely order a new trial. It is contended that this court has no power to order judgment in an action triable to a jury,

unless a motion for a directed verdict is made in the court below. In support of his contention, counsel cites § 7643, Comp. Laws 1913. The statute quoted and relied upon by plaintiff's counsel was adopted from Minnesota. And the Minnesota supreme court has held it not applicable to actions tried to the court without a jury. See Hughes v. Mcehan, 84 Minn. 226, 87 N. W. 768; Noble v. Great Northern R. Co. 89 Minn. 147, 94 N. W. 434; Meshbesher v. Channellene Oil & Mfg. Co. 107 Minn. 104, 131 Am. St. Rep. 441, 119 N. W. 428. Nor are we wholly satisfied that this court is without power to order judgment, even in cases tried to a jury, even though no motion for a directed verdict was made, where the evidence clearly shows that it would be a futile and idle act to order a new trial. See Comp. Laws 1913, § 7844. But as this latter question is not involved in this case, we express no opinion thereon.